IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


REGINA C. SHAW,                                    6:16-cv-01976-BR

        Plaintiff,                                 OPINION AND ORDER

v.

COMMISSIONER, Social
Security Administration,

        Defendant.

KATHERINE EITENMILLER
MARK A. MANNING
Harder Wells Baron & Manning
474 Willamette Street
Eugene, OR 97401
(541) 686-1969

        Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**LISA GOLDOFTAS**
Social Security Administration
Office of the General Counsel
701 Fifth Avenue
Suite 2900 MS 221A
Seattle, WA 98104-7075
(206) 615-2539

        Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Regina C. Shaw seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II and Disabled Widow Benefits under Title XVI of the Social Security Act.

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

On October 4, 2012, Plaintiff filed an application for DIB alleging a disability onset date of November 11, 2011. Tr. 186-91.[1] The record reflects Plaintiff also filed for Disabled Widow Benefits on October 4, 2012. Tr. 186-91. Her applications were

---

[1] Citations to the official transcript of record filed by the Commissioner on August 23, 2011, are referred to as "Tr."

denied initially and on reconsideration.  An ALJ held a hearing on April 10, 2015.  Tr. 43-88.  At the hearing Plaintiff and a vocational expert (VE) testified.  Plaintiff was represented by an attorney.

On May 28, 2015, the ALJ issued an opinion in which he found Plaintiff was not disabled before the end of the relevant period and, therefore, is not entitled to benefits.  Tr. 17-31.  On August, 8, 2016, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  Tr. 1-4.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## <u>BACKGROUND</u>

Plaintiff was born on March 9, 1954.  Tr. 186.  Plaintiff was 61 years old at the time of the hearing.  Plaintiff has an Associates Degree.  Tr. 53.  Plaintiff also has past relevant work experience as a technical support specialist, order clerk, and supervisor of accounting clerks.  Tr. 81.

Plaintiff alleges disability due to depression, arthritis, vertigo, scoliosis, fibromyalgia, insomnia, sleep apnea, and Dercum's disease.  Tr. 89.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the

medical evidence.  *See* Tr. 24-28.

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla [of evidence]

but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.  The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the

Commissioner determines the claimant does not have any medically severe impairments or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).


## **ALJ'S FINDINGS**

At the preliminary phase the ALJ found the prescribed period for Plaintiff's Disabled Widow Benefits ended on February 28, 2014. Accordingly, the relevant period in this matter is November 1, 2011, through February 28, 2014. Tr. 19.

At Step One the ALJ found Plaintiff had not engaged in

substantial gainful activity from her November 1, 2011, alleged onset date through February 28, 2014, the end of the prescribed period. Tr. 20.

At Step Two the ALJ found Plaintiff had the severe impairments of osteoarthritis, fibromyalgia, and obesity before the end of the prescribed period. Tr. 20. The ALJ also found Plaintiff's impairment of depression was nonsevere before the end of the prescribed period. Tr. 20.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1, before the end of the prescribed period. Tr. 20. The ALJ found Plaintiff had the RFC to perform light work through the end of the prescribed period even though Plaintiff was limited to occasional stooping, crouching, kneeling, crawling, and climbing and frequent reaching bilaterally, handling bilaterally, and fingering bilaterally. Tr. 20.

At Step Four the ALJ found Plaintiff could perform her past relevant work as a technical support specialist and accounting clerk supervisor before the end of the prescribed period. Tr. 30-31. Accordingly, the ALJ found Plaintiff was not disabled before the end of the prescribed period. Tr. 31.

## <u>DISCUSSION</u>

Plaintiff contends the ALJ erred when he (1) found at Step Two that Plaintiff's depressive disorder was nonsevere during the relevant period and that Dercum's disease was not a medically determinable impairment during the relevant period; (2) improperly partially rejected Plaintiff's testimony; (3) improperly partially rejected the lay-witness statement of Cheryl Ann Thompson; (4) improperly rejected the opinion of treating physician Kyle Homertgen, M.D.; and (5) failed to include mental limitations in Plaintiff's RFC.

**I.    The ALJ did not err at Step Two.**

Plaintiff asserts the ALJ erred at Step Two when he found Plaintiff's depressive disorder was nonsevere during the relevant period and that Dercum's disease was not a medically determinable impairment during the relevant period.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). *See also Ukolov*, 420 F.3d at 1003. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a),

(b).  An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities.  20 C.F.R. § 404.1521(a).  Plaintiff has the burden at Step Two to establish the existence of a severe impairment and to show any error is harmful.

### A.  Depression

The ALJ found Plaintiff's depressive disorder resulted in only mild difficulty with maintaining concentration, persistence, and pace and did not result in any difficulty with activities of daily living and social functioning.  Ryan Scott, Ph.D., conducted a psychodiagnostic evaluation of Plaintiff on April 8, 2013.  Dr. Scott found Plaintiff had a depressive disorder, but he concluded Plaintiff "would not likely have marked impairment in understanding and memory, sustained concentration or persistence, social interaction or adaptation."  Tr. 423.  Dr. Scott also concluded "[i]t is unlikely that mental health issues would impair her ability to work to a severe level."  Tr. 423.  Similarly, Dorothy Anderson, Ph.D., reviewing psychologist, found Plaintiff did not have any difficulty in maintaining social functioning and had only mild difficulty with concentration, persistence, and pace.  Tr. 112.  In addition, the record reflects Plaintiff went to counseling only briefly from mid-2014 through January 2015 and had normal mental-status examinations.  Tr. 433-65.

On this record the Court concludes the ALJ did not err at Step Two when he found Plaintiff's depressive disorder was nonsevere during the relevant period.

**B. Dercum's disease**

The ALJ found Dercum's disease was not a medically determinable impairment during the relevant period.[2]

The record reflects Plaintiff had three non-tender lipomas removed from her neck between 1998 and 2000. Tr. 333, 338-39. In June 2012 Plaintiff reported to treating physician Sidney Davidson, M.D., that she was "concerned about multiple lipomas" and "wonder[ed] if this could be a cause of her leg pain." Tr. 388. On examination Dr. Davidson noted Plaintiff had "small nodular changes consistent with fatty tissue lipomas scattered throughout [her left thigh]. She is mildly uncomfortable with palpation." Dr. Davidson recommended stretching and NSAIDS. Tr. 389.

In October 2013 Plaintiff "endorsed having multiple [painful] lipomas in her thighs" to examining physician Andrea Marshall, D.O. Tr. 426. Dr. Marshall diagnosed "[d]iffuse musculoskeletal pain, likely associated with arthritic symptoms."

---

[2] Dercum's disease is a rare disease that "is characterized by 'multiple, painful growths consisting of fatty tissue (lipomas).' The growths 'mainly occur on the trunk, the upper arms and upper legs and are found just below the skin (subcutaneously).'" *Monahan v. Comm'r of Soc. Sec.*, No. 16-13026, 2017 WL 4158669, at *10 n.3 (E.D. Mich. Aug. 22, 2017)(citing http://www.webmd.com/a-to-z-guides/dercum-disease).

Tr. 430.  Dr. Marshall concluded Plaintiff was able to stand and/or to walk up to six hours in an eight-hour work day, did not have any limitations in her ability to sit, and was able to lift and to carry 20 pounds occasionally and 10 pounds frequently. Tr. 430.

Plaintiff began treatment with Kyle Homertgen, M.D., on March 12, 2014, after the end of the relevant period.  Plaintiff reported a history of arthritic pain in her hands, wrists, neck, feet, and lower back as well as extreme fatigue and lipomas in her neck and thighs.  Tr. 484.  Dr. Homertgen diagnosed Plaintiff with arthritic pain at hands, wrists, neck, and lower back; obesity; and "other malaise and fatigue."  Tr. 485.  In May 2014 Plaintiff advised Dr. Homertgen that she was experiencing pain from the lipomas in her left leg and "ask[ed] about the diagnosis adiposis dolorosa [Dercum's disease]."  Tr. 480.  Dr. Homertgen recommended gentle stretching and diet changes.

In March 2015 Dr. Homertgen referred Plaintiff to endocrinologist Jonathan Purnell, M.D., for examination of Plaintiff's lipomas.  Plaintiff reported to Dr. Purnell that she had a history of "painful masses first in her left thigh, and then on her right thigh."  Tr. 514.  Plaintiff stated she recently noticed "clusters of grapes of new, tender nodules across her abdomen, as well as new painful nodules in her L antecubital area, right elbow, and L posterior calf."  Tr. 514.

Dr. Purnell noted "[p]rominent, large tender lipomas L lateral thigh; smaller ones on R upper thigh." Tr. 515. Dr. Purnell was "[u]nable to palpate reported nodules in forearms and abdomen." Tr. 515. Dr. Purnell's records do not contain a diagnosis of Dercum's disease nor any indication that he concluded Plaintiff had suffered from Dercum's disease before the time of her visit to him in March 2015.

On this record the Court concludes the ALJ did not err at Step Two when he found Dercum's disease was not a medically determinable impairment during the relevant period.

Moreover, the Ninth Circuit has held when the ALJ has resolved Step Two in a claimant's favor, any error in designating specific impairments as severe at Step Two does not prejudice a claimant if the ALJ considered the impairments when assessing Plaintiff's RFC. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(any error in omitting an impairment from the severe impairments identified at Step Two was harmless when Step Two was resolved in claimant's favor). Here the ALJ considered Plaintiff's fatigue, fibromyalgia, osteoarthritis, and obesity in his assessment of Plaintiff's RFC. Accordingly, any error in the ALJ's failure to designate depression and/or Dercum's disease at Step Two was harmless.

## II.  The ALJ did not err when he partially rejected Plaintiff's testimony.

Plaintiff alleges the ALJ erred when he failed to provide clear and convincing reasons for partially rejecting Plaintiff's hearing testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  799 F.2d 1403 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Parra,* 481 F.3d at 750.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester*, 81 F.3d at 834).

Plaintiff testified at the hearing that she began to have "a lot of pain" beginning at the "end of 2011." Tr. 50. Plaintiff stated it began in Spring 2011 and became progressively worse. Plaintiff stated by the time she filed for benefits in October 2012 she could "hardly walk and . . . was limping, it was very painful, so I just kind of stopped doing anything." Tr. 50. Plaintiff testified she was experiencing chronic pain from arthritis and lipomas in November 2011, it was hard for her to walk, she began falling often, and she often dropped things. Tr. 51. Plaintiff also testified she was an "active member" of the Rainy Day Blues Society (RDBS) from approximately March 2012 to March 2014. Tr. 55. Plaintiff testified as a member of the RDBS she would sit in meetings that occurred once or twice a month, take notes, and "help[] do things." Tr. 55. In addition, Plaintiff would spend five to ten hours per week updating their website, keeping their website and Facebook page current, and redoing documents that were outdated. Tr. 57. Plaintiff stated in 2011 she had been a volunteer DJ on a blues radio show that aired from 5:30 a.m. to 8:00 a.m., but she stopped in April 2012 because she "couldn't deal with getting up in the mornings anymore." Tr. 56. Plaintiff testified she also served on the Springfield Neighborhood Watch Board for five years, which involved attending monthly meetings, planning and working on an annual event at Island Park, and "occasional work in between."

Tr. 57.  Plaintiff stopped serving on the Neighborhood Watch
Board in "late 2012."  Tr. 57.

Plaintiff testified she works as a vendor at Saturday
Market.  Tr. 51.  "People" help Plaintiff set up and take down
her stall at Saturday market.  Tr. 63.  Plaintiff makes and sells
soap, balms, lavender sachets, and crochet items.  Tr. 52, 63.
Plaintiff vended at Saturday Market six or seven times in 2012,
an unknown number of times in 2013, and 26 times in 2014.
Tr. 76.  Plaintiff maintains a Facebook page for the items she
sells at Saturday Market and "has three websites" on which she
posts photographs.  Tr. 65.  In addition, at the time of the
hearing Plaintiff helped to care for her two grandchildren,
aged 9 and 12, for which her daughter paid her $300 per month.

Plaintiff stated elevating her legs helps relieve some of
her symptoms because her "ankles are swollen all the time and
. . . it . . . takes some of the pressure off that and the lower
back."  Tr. 74.  Plaintiff also gets some relief from her lipoma
pain when she wraps her legs and when she uses an herbal balm.
Plaintiff does not take over-the-counter pain medication except
"at critical points" because in the past she was taking Tylenol
every night and it "totally messed up [her stomach]."  Tr. 58.
Plaintiff testified Dr. Homertgen prescribed oxycodone just
before the April 2015 hearing, and it helps with pain.  Plaintiff
stated she does not like to take oxycodone, however, unless she

is going to sleep.  Tr. 59-60.  Plaintiff does not take
antidepressants and is not in counseling for depression.

The ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause the alleged
symptoms" during the relevant period, but Plaintiff's "statements
concerning the intensity, persistence and limiting effects" of
her symptoms are not credible.  The ALJ found Plaintiff's
activities of daily living support a finding that she could
perform a range of light work.  The ALJ pointed out that
Plaintiff helped her daughter care for her children five days per
week and received $300 per month for doing so; Plaintiff
crocheted and made soap, balms, and sachets that she regularly
sold at Saturday Market; Plaintiff reported in September 2014
that she had helped a friend "move things from her house" and
that she had "started bead-working again"; and during the
relevant period Plaintiff volunteered at RDBS, the Springfield
Neighborhood Watch Board, and as a DJ.  Tr. 23, 458.  Plaintiff
stated she could only pay attention for three or four minutes in
June 2013, but the ALJ pointed out that Plaintiff's craft
business, her volunteer work, her vending, and her care of her
grandchildren all indicated she could concentrate for greater
than three or four minutes at a time.  In addition, Plaintiff
indicated she could not walk or stand without pain, but her
ability to vend regularly at Saturday Market, her computer work,

and her crafting during the relevant period indicate she could sit, stand, and walk "for greater periods than she allows." Tr. 23. In addition, Dr. Marshall assessed Plaintiff in 2013 with the ability to stand and to walk up to six hours and to sit for an unlimited time. Tr. 430.

On this record the Court finds the ALJ did not err when he partially rejected Plaintiff's testimony because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**III. The ALJ did not err when he partially rejected the lay-witness statement of Cheryl Ann Thompson.**

Plaintiff alleges the ALJ erred when he failed to give legally sufficient reasons for partially rejecting the lay-witness statement of Plaintiff's friend, Cheryl Ann Thompson.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir.

2006).  When "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  *Stout,* 454 F.3d at 1056.

Thompson noted in her March 28, 2013, Third Party Adult Function Report that Plaintiff had lost strength and flexibility in her hands and often dropped things.  Tr. 262.  Thompson stated Plaintiff helped to get her grandchildren (6 and 10 at that time) ready for school, did light house-cleaning, fed the pets, crocheted, napped, picked up her grandchildren from school, shopped, watched her grandchildren until her daughter got home from work, and prepared simple dinners.  Tr. 262.  Thompson noted Plaintiff was no longer able to participate in volunteer activities, her church, or jazz clubs, and she could no longer dance, walk long distances, or cook for large gatherings.  Tr. 262.  Thompson stated Plaintiff could only lift light items, walk half a block, pay attention for 10-15 minutes, and stand for short periods.  Tr. 266.

The ALJ considered Thompson's report and gave it "little weight" for the same reasons that he partially rejected Plaintiff's testimony and because Thompson's report was based in part on Plaintiff's subjective report of her own symptoms.

Tr. 29. *See Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009)("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the plaintiff's] subjective complaints, and because [the plaintiff's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). In any event, the ALJ noted Thompson's report was largely consistent with the ALJ's assessment of Plaintiff's RFC.

On this record the Court concludes the ALJ did not err when he gave Thompson's report little weight because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**IV. The ALJ did not err when he rejected the opinion of treating physician Dr. Homertgen.**

Plaintiff alleges the ALJ erred when he improperly rejected the opinion of treating physician Dr. Homertgen.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear

and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at
957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir.
1996).

Plaintiff began treatment with Dr. Homertgen in April 2014,
which was after the relevant period.  On April 3, 2015,
Dr. Homertgen completed a medical evaluation of Plaintiff in
which he diagnosed her with Dercum's disease, fibromyalgia, and
vertigo.  Tr. 517.  Dr. Homertgen noted Plaintiff's "signs" of
those impairments are "multiple lipomas [and] myofascial
restriction, diffuse."  Tr. 518.  Dr. Homertgen stated Plaintiff
"will need to rest, lie down, or elevate feet 4-5 times a day,"
can stand and walk at least two hours in an eight-hour work day,
and can sit "with normal breaks" for less than six hours in an
eight-hour work day."  Tr. 518-19.  Dr. Homertgen also stated
Plaintiff would likely be absent from work for more than two days
per month.  Tr. 519.

The ALJ rejected Dr. Homertgen's April 2015 opinion and
noted Dr. Marshall, examining physician, stated during the
relevant period that Plaintiff could stand and walk up to six
hours in an eight-hour work day and did not have any limitation
on sitting.  Tr. 430.  The ALJ also noted Dr. Homertgen's
treatment notes did not support his opinion.  For example, in
March 2014 Dr. Homertgen noted Plaintiff's complaints of lipomas;
found Plaintiff had "arthritic pain" in her hands, neck, and

lower back; had "myalgia and myosistis,[3] unspecified"; and was
obese. Tr. 485-86. Dr. Homertgen recommended a plant-based diet
and gentle exercise. Tr. 485-86. Dr. Homertgen neither noted
nor recommended Plaintiff elevate her legs. Similarly in April
2014 Dr. Homertgen treated Plaintiff with "gentle techniques of
balanced ligamentous tension and myofascial release." Tr. 483.
Dr. Homertgen again recommended weight management. On May 14,
2014, Dr. Homertgen noted Plaintiff had multiple lipomas. He
recommended "lifestyle changes, low fat high nutrient plant based
diet and OMT [osteopathic manipulative treatment] trial for leg
fascial pain." Tr. 481. Throughout 2014 Dr. Homertgen treated
Plaintiff with "gentle techniques of balanced ligamentous tension
and myofascial release" and OMT, and he recommended weight
management.

In addition, Dr. Homertgen's notes did not reflect Plaintiff
needed to elevate her legs or that she had trouble with extended
sitting. On September 29, 2014, Dr. Homertgen recommended
Plaintiff continue to use oral and topical herbal remedies.
Tr. 475. On February 20, 2015, Dr. Homertgen also noted
Plaintiff had "pain at lipomas," which Plaintiff "fe[lt were]
increasing in quantity and have been more painful on her legs,
abdomen." Tr. 472. Dr. Homertgen, however, did not indicate

---

[3] Myalgia is pain in a group of muscles, and myosistis is an
inflammation of the muscles,.

Plaintiff should or needed to elevate her legs.  He recommended Plaintiff increase her intake of Vitamin D and focus on weight management.  Tr. 474.

In March 2015 Plaintiff saw Dr. Purnell on referral from Dr. Homertgen to evaluate Plaintiff's lipomas.  Dr. Purnell noted "[p]rominent, large tender lipomas L lateral thigh; smaller ones in R upper thigh.  Unable to palpate reported nodules in forearms or abdomen."  Tr. 515.  Dr. Purnell's report did not contain a diagnosis of Plaintiff's impairments or any evaluation of limitations based on her condition.  Nevertheless, on April 3, 2015, Dr. Homertgen stated in his notes that Dr. Purnell "confirmed Dercum's disease."  Tr. 521.  Dr. Homertgen prescribed opiates for pain management.  Again, Dr. Homertgen's treatment notes did not indicate he recommended Plaintiff elevate her legs or that Plaintiff has limitations on sitting.

On this record the Court concludes the ALJ did not err when he rejected Dr. Homertgen's April 2015 opinion because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**V.    The ALJ did not err when he failed to include mental limitations in his assessment of Plaintiff's RFC.**

Plaintiff alleges the ALJ erred when he failed to include mental limitations in his assessment of Plaintiff's RFC. Specifically, Plaintiff asserts the ALJ erred when he did not

include limitations in Plaintiff's concentration, persistence, and pace.

As noted, the ALJ found Plaintiff's depression during the relevant period caused her only mild difficulty with maintaining concentration, persistence, and pace and did not result in any difficulty with social functioning. The ALJ, therefore, did not include any mental limitations in Plaintiff's RFC.

On April 8, 2013, Dr. Scott conducted a psychodiagnostic evaluation of Plaintiff and concluded she met "the criteria for major depressive disorder, moderate." Tr. 423. Dr. Scott, however, concluded "[b]ased on [Plaintiff's] performance during [the] evaluation, [Plaintiff] would not likely have marked impairment in understanding and memory, sustained concentration or persistence, social interaction or adaptation." Tr. 423. Dr. Scott noted it was "unlikely that mental health issues would impair [Plaintiff's] ability to work to a severe level." Tr. 423. In addition, the record reflects Plaintiff received mental-health treatment only from August 2014 through January 2015. Plaintiff reported in therapy that she suffered from post-traumatic stress disorder (PTSD) and attention-deficit disorder (ADD). Dr. Scott, however, specifically noted in his April 2013 report that Plaintiff had never been officially diagnosed with ADD. Tr. 421. In addition, Dr. Scott found Plaintiff did not meet the criteria for PTSD, and she did not

"appear [to have a] significant impairment in attention" based on her mental-status testing.  Tr. 423.

On this record the Court concludes the ALJ did not err when he did not include mental limitations in Plaintiff's RFC.


**<u>CONCLUSION</u>**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 6th day of February, 2018.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge